**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**FLOYD A. METCALF,**

    **Plaintiff,**

v.                                                              Case No.  8:11-cv-566-T-30EAJ

**ECKERD YOUTH ALTERNATIVES,
et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motions to Dismiss (Dkts. 5, 7) and Plaintiff's Responses in opposition (Dkts. 8, 12).  The Court, having reviewed the motions, responses, and being otherwise advised in the premises, concludes that the motions should be granted.

## BACKGROUND

This case arises from an alleged hostile work environment Plaintiff experienced during his employment at Defendant Eckerd Youth Alternatives, Inc. ("Eckerd Youth").  Plaintiff, a male, was hired as a counselor for Defendant and answered directly to Defendant, Charles Smith.  Plaintiff was a good employee and received appropriate raises and good employment evaluation scores.

In July 2009, Plaintiff reported to Smith the inappropriate behavior of Defendant Jamie Armstrong, a female and coworker.  Specifically, the complaint alleges that on July

23, 2009, Jerald Balmir, another employee, informed Plaintiff that Armstrong approached him in front of other employees and made a comment to him that she had a "wet dream" about him. Plaintiff had previously warned Armstrong about her inappropriate comments, such as a comment she made about using her "rape whistle" if she was getting raped or wanted to be raped. While Plaintiff was in the process of writing a report about Armstrong's "wet dream" comment, Armstrong approached him in the office with a poster. The poster had a picture of a rooster on it, with the words FREE on the top, and RIDES below the picture. Armstrong requested that she hang her "FREE COCK RIDES" poster in the supervisors' office. Plaintiff instructed her to remove the poster from the office.

Plaintiff discussed Armstrong's behavior with Smith and Smith responded that he "could not do anything" because Armstrong was a member of the Leadership Team. When Armstrong discovered that Plaintiff had filed a report about her behavior, she became very hostile towards Plaintiff.

On July 27, 2009, Plaintiff was called in a meeting with Robert Patterson, the program director. Patterson told him that he was overreacting about Armstrong and that Armstrong was just a little immature. Patterson also stated that Armstrong was too valuable of an employee to let go, but Plaintiff was replaceable. Patterson also instructed Plaintiff to apologize to Armstrong.

Armstrong's hostile and threatening behavior towards Plaintiff continued and, on August 8, 2009, Plaintiff had another meeting with Patterson and Armstrong. Plaintiff was

again forced to apologize to Armstrong. It was also repeated to him that he could be replaced.

After the August meeting, Plaintiff was forced to do jobs outside of his supervisory job description, such as cutting grass, wiping walls, and cleaning bathrooms. His performance appraisal dropped to the lowest of all supervisors.

On October 4, 2009, while on personal time off, Plaintiff was arrested for domestic battery. On October 6, 2009, Plaintiff was placed on administrative leave until the domestic matter was cleared up per Defendant's policy. On October 8, 2009, Plaintiff was terminated for violating the "Role Model Policy." Plaintiff was terminated during a conference call with Smith and Crystal Barwick, an employee from human resources. All charges against Plaintiff were dropped on October 21, 2009.

On November 5, 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Right to Sue from the EEOC on January 3, 2011. Plaintiff filed the instant case on March 17, 2011. Plaintiff alleges five causes of action against Defendants arising under Title VII of the Civil Rights Act of 1964 and Florida law. Counts I and II are directed solely at Eckerd Youth and allege sexual harassment/hostile workplace and retaliation. Counts III through V are directed against all Defendants and allege negligence, intentional infliction of emotional distress, and civil conspiracy.

This case is at issue upon Defendants' motions to dismiss.

## **DISCUSSION**

**I.   Standard of Review on a Motion to Dismiss**

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff.  *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  Nonetheless, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1960 (2007).  While in the ordinary case a plaintiff may find the bar exceedingly low to plead only more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," it is clear that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1959, 1965; *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974, n.43 (11th Cir. 2008) (noting the abrogation of the "no set of facts" standard and holding *Twombly* "as a further articulation of the standard by which to evaluate the sufficiency of all claims").  Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## II.  Defendants' Motions to Dismiss

### A.  Count I of the complaint

Eckerd Youth moves to dismiss Count I of Plaintiff's complaint. In Count I, Plaintiff alleges that he was subjected to sexual harassment and a hostile work environment based on Armstrong's inappropriate behavior.

In order to establish a hostile work environment claim under Title VII, Plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive working environment; and (5) a basis for holding Eckerd Youth liable. *Morven v. Progress Energy, Inc.*, 2008 WL 3243860, *3 (M.D. Fla. 2008); *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1275 (11th Cir. 2002). The law is clear that teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment. *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (*citing Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

Here, as Eckerd Youth points out, Plaintiff's allegations fall woefully short of stating a claim of sexual harassment/hostile work environment under Title VII. Plaintiff alleges that he was personally subjected to one incident: being approached by Armstrong with a poster containing a picture of a rooster with the words FREE on the top and RIDES below. Other than the "free cock rides" incident, Plaintiff alleges that Armstrong commented to another

employee something about having a wet dream about the other employee and mentioned on another occasion something about having a "rape whistle" if she was being raped or wanted to be raped. Even taking all of these allegations as true, which the Court must do at this stage, they are insufficient to establish a claim as a matter of law.

There are no allegations that Armstrong's comments impacted Plaintiff's work environment or his work performance. There are no allegations that Armstrong's comments were harassment, <u>based on Plaintiff's sex</u>. And the three incidents do not meet the frequency requirement of a hostile work environment claim, nor are they sufficiently severe. Finally, although Plaintiff alleges that he complained about Armstrong's behavior to Eckerd Youth, it is entirely unclear whether Plaintiff put Eckerd Youth on notice that he felt sexually harassed and/or subjected to a hostile work environment based on his sex.

Accordingly, Count I must be dismissed. The Court will allow Plaintiff to amend Count I. However, any further amendment of this claim will be futile if the three incidents discussed herein are the only incidents of alleged sexual harassment/hostile environment that Plaintiff experienced during his employment.

B. <u>Count II of the complaint</u>

Eckerd Youth moves to dismiss Count II of Plaintiff's complaint. In Count II, Plaintiff alleges that Eckerd Youth retaliated against him by firing him after he complained about Armstrong's inappropriate behavior.

A claim for retaliation under Title VII requires a plaintiff to show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) the

adverse employment action was causally related to the protected activity. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).

It is clear that Plaintiff suffered an adverse employment action, i.e., his termination. But Plaintiff fails to adequately allege in the complaint that he engaged in statutorily protected activity. Although the complaint does allege that Plaintiff complained about Armstrong's inappropriate behavior, there is no allegation that Plaintiff stated Armstrong's behavior constituted sexual discrimination or created a hostile working environment. Indeed, there is no allegation that Armstrong's behavior was based on sex or any other protected group. For example, the complaint states that Armstrong was making inappropriate sexual comments "in front of the children." Although this would certainly constitute inappropriate conduct in the workplace, it does not reflect that Armstrong's behavior was targeted at a protected class. And a complaint about treatment or discipline unrelated to statutorily-protected matters does not constitute protected activity and thus cannot serve as the basis for a retaliation claim. *See Marcelin v. Eckerd Corp. Of Fla., Inc.*, 2006 WL 923745, at *9 (M.D. Fla. April 10, 2006) (plaintiff who did not expressly complain about discrimination did not put employer on notice of violation and therefore did not engage in protected activity).

Accordingly, Count II must be dismissed, without prejudice to Plaintiff to amend this claim.

C.  <u>Count III of Plaintiff's complaint</u>

Plaintiff indicates in his responses that he will withdraw this claim, which is a negligence claim against all Defendants. Accordingly, Count III is dismissed with prejudice.

D.  <u>Count IV of Plaintiff's complaint</u>

Defendants move to dismiss Count IV of Plaintiff's complaint. In Count IV, Plaintiff alleges that Defendants are liable for intentional infliction of emotional distress. Defendants argue that Plaintiff's allegations do not come close to approaching the required threshold of conduct that is outrageous, extreme, atrocious, and utterly intolerable in a civilized society. The Court agrees.

Under Florida law, Plaintiff must identify reckless and outrageous conduct that caused emotional distress in order to prevail on his intentional infliction of emotional distress claim. *De La Campa v. Grifols America, Inc.*, 819 So. 2d 940, 943 (Fla. 3d DCA 2002). "Outrageous" conduct is that which is <u>so extreme</u> that it goes beyond all possible bounds of decency. *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985). Liability does not extend to mere insults, indignities, or threats. *Williams v. Worldwide Flight Servs.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004).

Here, even taking all of Plaintiff's allegations of Defendants' actions towards him as true, they fall woefully short of establishing an intentional infliction of emotional distress claim under Florida law. *See Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 (11th Cir. 1993); *Brown v. Zaveri*, 164 F. Supp. 2d 1354, 1363 (S.D. Fla. 2001).

Accordingly, Count IV must be dismissed, without prejudice to Plaintiff to amend this claim. Again, if the three incidents alleged in the complaint related to Armstrong and Eckerd Youth's alleged retaliation of subjecting Plaintiff to menial tasks, making him apologize to Armstrong, and providing him with a negative performance are the only examples of "outrageous" conduct Plaintiff experienced, any further amendment of this claim would be futile as to Eckerd Youth or Armstrong. Also, Smith, Patterson, and Barwick are dismissed from this claim with prejudice.

E.  Count V of Plaintiff's complaint

Defendants move to dismiss Count V of Plaintiff's complaint. In Count V, Plaintiff alleges that Defendants "conspired to subject [Plaintiff] to hostile work environment, sexual harassment, retaliation and tangible job detriment." Defendants argue that Plaintiff's allegations do not come close to establishing a civil conspiracy claim. The Court agrees.

Under Florida law "[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong,* 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997) (citations omitted).

Generally speaking, neither an agent nor an employee can conspire with his or her corporate principal or employer. *See Rivers v. Dillards Dept. Store, Inc.,* 698 So. 2d 1328, 1333 (Fla. 1st DCA 1997). This is known as the "intracorporate conspiracy doctrine," which establishes the rule that the employees of a public entity or private corporation, "acting as

agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Dickerson v. Alachua County Comm'n,* 200 F.3d 761, 768 (11th Cir. 2000). However, the intracorporate conspiracy doctrine does not apply when corporate agents "act outside the scope of their employment, have an independent personal stake in the corporate action, or engage in a series of discriminatory acts as opposed to a single action." *Id.* at 770.

Plaintiff attempts to avoid dismissal of this claim by stating that he has knowledge that Armstrong and Patterson were involved in a sexual relationship during the time of the events alleged in the complaint. And Plaintiff wants the opportunity for discovery to take place in order to determine the nature of Armstrong and Patterson's relationship because Plaintiff believes this sexual relationship may be the reason Patterson showed "such favoritism to [Armstrong] when [Plaintiff] reported her misdeeds to him." Plaintiff contends that if Patterson was covering up for his girlfriend, his actions were not taken in the scope of his employment. Notably, none of these facts about this alleged sexual relationship are in Plaintiff's complaint. And Plaintiff must <u>first</u> state an actionable claim before he is permitted to take discovery. In other words, the Court will not permit Plaintiff to journey on a fishing expedition in order to discover allegations that may then establish an actionable claim.

Also, Plaintiff does not state how Eckerd Youth, Smith, and Barwick were involved in this alleged conspiracy. And Plaintiff does not state, nor does the complaint sufficiently allege, the underlying tort or wrong that was the subject of the conspiracy. If the underlying tort is retaliation in violation of Title VII, the individual Defendants are not parties to this

count and, thus, could not be a part of the conspiracy. Simply put, this claim is entirely deficient.

Accordingly, Count V must be dismissed. The dismissal is with prejudice as to Smith and Barwick and without prejudice as to Eckerd Youth, Patterson, and Armstrong. The Court warns Plaintiff that if he amends this claim with entirely unsupported allegations, the Court will consider awarding sanctions against Plaintiff.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motions to Dismiss (Dkts. 5, 7) are granted.

2. Count I of the complaint is dismissed without prejudice to amend within fourteen (14) days of this Order.

3. Count II of the complaint is dismissed without prejudice to amend within fourteen (14) days of this Order.

4. Count III of the complaint is dismissed with prejudice.

5. Count IV of the complaint is dismissed without prejudice to amend within fourteen (14) days of this Order solely as to Defendants Eckerd Youth and Armstrong. Count IV is dismissed with prejudice as to Smith, Barwick, and Patterson.

6. Count V of the complaint is dismissed without prejudice to amend within fourteen (14) days of this Order solely as to Defendants Eckerd Youth, Armstrong, and Patterson. Count V is dismissed with prejudice as to Smith and Barwick.

7. The CLERK is directed to terminate Defendants Charles Smith and Crystal Barwick.

**DONE** and **ORDERED** in Tampa, Florida on August 11, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2011\11-cv-566.mtsdismiss5and7.frm