**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FLOYD A. METCALF,**

**Plaintiff,**

**v.** **Case No. 8:11-cv-566-T-30EAJ**

**ECKERD YOUTH ALTERNATIVES, et al.,**

**Defendants.**
**_____________________________________/**

# ORDER

THIS CAUSE comes before the Court upon Defendant Eckerd Youth Alternatives, Inc.'s motion to dismiss (Dkt. 15) and Plaintiff's response in opposition (Dkt. 16). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied.

## BACKGROUND

This case arises from an alleged hostile work environment Plaintiff experienced during his employment at Defendant Eckerd Youth Alternatives, Inc. On May 1, 2001, Plaintiff, a heterosexual male, was hired as a counselor for Defendant and answered directly to Charles Smith, his immediate supervisor. Plaintiff was a security supervisor at the time of the alleged sexual harassment and unlawful termination. Plaintiff was a good employee and received appropriate raises and good employment evaluation scores.

In July 2009, Plaintiff reported to Smith the alleged inappropriate behavior of Defendant Jamie Armstrong, a female coworker. Specifically, the amended complaint alleges that on July 23, 2009, Jerald Balmir, another employee, informed Plaintiff that Armstrong approached him in front of other employees and made a comment to him that she had a sexual dream about him. Balmir told Plaintiff that the comment made him uncomfortable around Armstrong. Plaintiff had previously warned Armstrong about her inappropriate sexual comments, such as a comment she made about using her "rape whistle" if she was getting raped or wanted to be raped. This comment made male co-workers, including Plaintiff, uncomfortable.

While Plaintiff was in the process of writing a report about Armstrong's "dream" comment, Armstrong approached him in the office with a poster. The poster had a picture of a rooster on it, with the words FREE on the top, and RIDES below the picture. Armstrong requested that she hang her "FREE COCK RIDES" poster in the supervisors' office. Plaintiff instructed her to remove the poster from the office. Also during this time, Plaintiff received a complaint from Louis Eacobacci, a teacher, that Armstrong repeatedly made comments about Eacobacci having "swamp ass," because he was outside with students. Armstrong also told Eacobacci during an off campus trip that she and Eacobacci could "make-out" in the back of the theater.

Despite receiving verbal warnings, the amended complaint alleges that Armstrong continued to invite Plaintiff to her family's "chalet in Canada," where she could show him a "good time." This comment was made in a sexually suggestive manner. Armstrong also

repeatedly told Plaintiff that she was on the swim team in college and had a “great body” that he could “check out” if he would go with her to the chalet in Canada. She also continued to state that she wanted to see Plaintiff in a bathing suit.

Another incident occurred when Armstrong told Plaintiff that Paris Hilton was her idol and that she wanted to make “sex tapes.” Armstrong also inappropriately touched Plaintiff on several occasions. Plaintiff had to repeatedly remind Armstrong that he was married and did not appreciate receiving back massages from her, or her running her fingers through his hair, or suggestively touching his hand. In response, Armstrong laughed at Plaintiff’s reprimands and continued with her inappropriate actions. Armstrong also suggested reward programs to employees for doing a good job, with the grand prize being a date with her.

The amended complaint alleges that the above-described incidents were not isolated and were made repeatedly to Plaintiff and other male co-workers who had to report these incidents to Plaintiff in line with company policy.

Plaintiff had difficulty working around or with Armstrong due to the uncomfortable atmosphere she created with her overt sexual advances. Plaintiff alleges that Armstrong’s behavior interfered with his ability to perform the essential functions of his job. And that in approximately one month’s time, Plaintiff was subjected to the above-mentioned advances, comments, and unwanted touching.

Plaintiff alleges that Armstrong’s actions and comments were directed to Plaintiff because he was a male.

Plaintiff reported Armstrong's sexual harassment towards him, as well as her behavior towards other male employees, to his direct supervisor, Charles Smith, which Plaintiff alleges complied with Defendant's company policy on the issue of reporting sexual harassment. Plaintiff alleges that he expressed the interference Armstrong's aggressive sexual harassment was having on his work, as well as the work of other male employees. Smith responded that he "could not do anything" regarding Plaintiff's complaints, because Armstrong was a member of the leadership team. But he stated that he would report Plaintiff's complaints about Armstrong's behavior to Robert Patterson, the program director.

Plaintiff alleges that Armstrong became very hostile towards Plaintiff when she discovered that Plaintiff filed a report about her behavior.

On July 27, 2009, Patterson called Plaintiff into a meeting. Plaintiff alleges that he explained his complaint and Armstrong's sexual advances towards Plaintiff and other male employees, which he believed amounted to sexual harassment and a hostile workplace. Patterson told Plaintiff that he was overreacting about Armstrong and that Armstrong was just a little immature. Patterson also stated that Armstrong was too valuable of an employee to let go, but Plaintiff was replaceable. Patterson also instructed Plaintiff to apologize to Armstrong, which Plaintiff did on July 28, 2009.

Plaintiff alleges that Armstrong's hostile and threatening behavior towards Plaintiff continued and Plaintiff feared that his job was in jeopardy. On August 8, 2009, Plaintiff attended another meeting with Patterson, which Armstrong also attended. Plaintiff was again forced to apologize to Armstrong. It was also repeated to him that he could be replaced.

After the August meeting, Plaintiff alleges that he was forced perform tasks outside of his supervisory job description, such as cutting grass, wiping walls, and cleaning bathrooms. These "menial" tasks were announced over a radio, which undermined Plaintiff's authority. The juveniles in the facility taunted Plaintiff and Plaintiff's performance appraisal dropped to the lowest of all supervisors.

On October 4, 2009, while on personal time off, Plaintiff was arrested for domestic battery. On October 6, 2009, Plaintiff complied with Defendant's policy and informed Smith about the incident. Smith told Plaintiff that he had nothing to worry about, but that he would be placed on administrative leave until the matter was cleared up. On October 8, 2009, Plaintiff was terminated for violating the "Role Model Policy." Plaintiff was terminated during a conference call with Smith and Crystal Barwick, an employee from human resources. Plaintiff alleges that Smith and Barwick ignored him when he inquired about whether his termination was related to his sexual harassment complaints. Plaintiff alleges that the reason given for his termination was pretext for unlawful termination. And that the real reason for his termination was his sexual harassment complaints.

All charges related to the domestic battery were dropped on October 21, 2009. Plaintiff alleges that Defendant employs people that have drug convictions and DUIs. Plaintiff alleges that Defendant has also hired people who have been charged with, but not convicted of domestic battery.

On November 5, 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Right to Sue from the

EEOC on January 3, 2011. Plaintiff filed the instant case on March 17, 2011. Plaintiff's initial complaint alleged five causes of action arising under Title VII of the Civil Rights Act of 1964 and Florida law. On August 11, 2011, this Court dismissed the complaint, without prejudice. On August 25, 2011, Plaintiff amended his complaint. Plaintiff's amended complaint asserts two counts against Defendant for sexual harassment/hostile workplace (Count I) and retaliation (Count II). This case is now at issue upon Defendant's motion to dismiss these counts with prejudice for failure to state a claim.

## DISCUSSION

### I. Standard of Review on a Motion to Dismiss

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Nonetheless, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a plaintiff''s complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1960 (2007).

While in the ordinary case a plaintiff may find the bar exceedingly low to plead only more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," it is clear that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 1959, 1965; *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974, n.43 (11th Cir. 2008) (noting the abrogation of the "no set of facts" standard and holding *Twombly* "as a further articulation of the standard by which to evaluate the sufficiency of all claims"). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## II. Defendant's Motion to Dismiss

### A. Count I of the amended complaint

Defendant moves to dismiss Count I of Plaintiff's amended complaint with prejudice. In Count I, Plaintiff alleges that he was subjected to sexual harassment and a hostile work environment based on Armstrong's inappropriate behavior.

In order to establish a hostile work environment claim under Title VII, Plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive working environment; and (5) a basis for holding Defendant liable. *Morven v. Progress Energy, Inc.*, 2008 WL 3243860, *3 (M.D. Fla. 2008); *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1275 (11th Cir. 2002). The law is clear that teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment. *Mendoza v. Borden, Inc.*, 195 F.3d

1238, 1245 (11th Cir. 1999) (en banc) (*citing Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

The Court concludes that Plaintiff's amended allegations are sufficient to state a claim of sexual harassment/hostile work environment under Title VII. Plaintiff's amended complaint contains numerous incidents that he was personally subjected to and which made him uncomfortable and affected his job performance. Plaintiff also alleges that Armstrong's sexual comments and inappropriate touching were sexual in nature, based on his sex, and, although they were not particularly severe, they were frequent in a short period of time (one month). Finally, Plaintiff alleges that he placed Defendant on notice that he felt sexually harassed and subjected to a hostile work environment based on his sex.

Taking all of these allegations as true, which the Court must do at this stage, they are sufficient to establish a sexual harassment/hostile work environment claim. Accordingly, Defendant's motion to dismiss Count I with prejudice is denied.

**B. Count II of the amended complaint**

Defendant moves to dismiss Count II of Plaintiff's amended complaint. In Count II, Plaintiff alleges that Defendant retaliated against him by firing him after he complained about Armstrong's inappropriate and sexually harassing behavior.

A claim for retaliation under Title VII requires a plaintiff to show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) the adverse employment action was causally related to the protected activity. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).

It is clear that Plaintiff suffered an adverse employment action, i.e., his termination. Plaintiff's amended allegations also state that he engaged in statutorily protected activity. For example, Plaintiff alleges that he complained to his supervisors about Armstrong's inappropriate behavior, including the fact that her behavior amounted to sexual harassment and was creating a hostile working environment for Plaintiff and other male employees. Plaintiff also alleges that Armstrong's behavior was based on his sex, and that all of Armstrong's inappropriate conduct was directed to males.

Plaintiff alleges the temporal proximity between his complaints and the adverse action and states that the reason for his termination, the domestic battery arrest, was pretext for unlawful termination. Finally, Plaintiff alleges evidence of pretext; the amended complaint includes allegations that Plaintiff's immediate supervisor told Plaintiff that he would remain on administrative leave until the matter with the domestic arrest was resolved. Plaintiff also alleges that Defendant employs people who have been charged, but not convicted of domestic battery.

Taking all of these allegations as true, which the Court must do at this stage, they are sufficient to establish a retaliation claim. Accordingly, Defendant's motion to dismiss Count II with prejudice is denied.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant Eckerd Youth Alternatives, Inc.'s Motion to Dismiss (Dkt. 15) is DENIED.[1]

2. Defendant shall file an answer to the amended complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on September 27, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2011\11-cv-566.mtsdismiss15.wpd

[1] However, Plaintiff's references to 42 U.S.C. §§1981 and 1983 in paragraphs 1 and 5 of the amended complaint are hereby stricken because it is clear that Plaintiff does not intend to seek any relief under these statutory provisions (a point which Plaintiff appears to concede).